IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| Tamala A. Shelley ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  04-CV-1139 |
| ) | |
| The Prudential Insurance ) | |
| Company of America, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on Defendant Prudential's motion to dismiss Counts C, D and E for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[1] For the reasons below the Court recommends the motion be granted in part and denied in part.

## STANDARD OF REVIEW

Federal notice pleading standards apply to Prudential's motion to dismiss, even though the Court's jurisdiction is based on diversity. Beanstalk Group, Inc., v. AM Federal Corp., 283 F.3d 856 (7th Cir. 2002)("Federal pleading rules . . . govern even in diversity suits.").

---

[1] Defendant Prudential Insurance Company of America is referred to as "Prudential."

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the allegations in the complaint are taken as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in the light most favorable to Plaintiff. Patel v. City of Chicago, 383 F.3d 569, 572 (7th Cir. 2004). "'A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002), *quoting* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "'Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test'" on a motion to dismiss. Id. at 515, *quoting* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Attachments to the complaint are considered part of the complaint. Fed. R. Civ. Proc. 10©.

### BACKGROUND AND ALLEGATIONS

Plaintiff is a former employee of Western Illinois University ("WIU"). As a WIU employee, she was covered for statutory disability benefits under the State University Retirement System ("SURS"). In October, 1998, as a WIU employee, Plaintiff purchased supplemental disability benefits through a policy in force at WIU provided by Fortis Benefits Company. Premiums were withheld from Plaintiff's compensation to pay for those supplemental benefits.

On July 1, 2000, SURS contracted with Prudential to provide a supplemental disability policy (the "supplemental policy") to SURS employees. Prudential notified WIU employees, including Plaintiff, of its substitution for Fortis

in a communication dated the same day (the "Communication"). The Communication is attached to Plaintiff's Amended Complaint as Exhibit A. (d/e 23, Ex. A).

According to Plaintiff, the Communication intended to and did lead her to believe that she would qualify for long term disability benefits under the supplemental policy if she qualified for disability benefits under SURS. The Communication also allegedly led Plaintiff to believe that the benefits under the supplemental policy would not be reduced by the benefits Plaintiff received from SURS. Plaintiff alleges that Prudential knew that these representations were misleading and would induce Plaintiff to buy the supplemental policy before she had a chance to learn the policy's true coverage. Plaintiff believes she justifiably relied on the Communication in deciding to purchase the supplemental policy. Plaintiff alleges that she did not receive a copy of the insurance certificate or the supplemental policy until sometime after her reliance on the Communication.

Plaintiff was diagnosed with fibromyalgia on January 5, 2001. Her physician told her she was unable to work. Plaintiff's release from work was allowed by WIU and she qualified for statutory disability benefits from SURS on or around April, 2001. She has been receiving disability benefits under SURS since then.

Plaintiff submitted a proof of claim to Prudential under the supplemental policy on November 2, 2001. Despite her qualification for benefits under SURS,

Prudential refused, and continues to refuse, to pay any disability benefits to Plaintiff. Plaintiff learned through this refusal that determinations of disability under the supplemental policy are completely independent from determinations of disability under SURS, contrary to the Communication's representations. Plaintiff also learned that, contrary to the Communication's alleged representations, any benefits payable under the supplemental policy are reduced by SURS benefits.

On March 30, 2004, Plaintiff filed this case in Illinois Circuit Court against Prudential, seeking disability benefits under the supplemental policy. Prudential removed the case to federal court on diversity grounds on May 4, 2004.

On January 27, 2005, Plaintiff filed an Amended Complaint, which sets forth five state claims:

A)    Breach of contract;

B)    Unreasonable & vexatious denial of benefits under the Illinois Insurance Code, 215 ILCS 5/155;

C)    Unfair/deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.;

D)    Deceptive trade practices under the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(12); and,

E)    Common law fraud;

Counts C-E are new and are the subject of Prudential's motion to dismiss. These counts are based on Plaintiff's allegations that Prudential intentionally

made the misleading statements in the Communication to induce Plaintiff to enroll in the supplemental policy.

## THE COMMUNICATION

The Court sets forth *infra* the relevant parts of the Communication, since it is the focus of Prudential's motion. The bar graph that Plaintiff alleges is misleading is not reproduced–that can be found in Exhibit A to the Amended Complaint (d/e 23).

The Communication's cover page states:

**VOLUNTARY SUPPLEMENTAL
LONG TERM DISABILITY PLAN**

**Sponsored and Endorsed by the
State Universities Retirement System (SURS)
as a Supplement to Your Disability Coverage**

*Insured by the Prudential Insurance Company of America*

Western Illinois University
Policy #93020

[Prudential Logo]

The text of the Communication states, in relevant part:

\*   \*   \*

Would you and your family be able to keep your home, auto and other prized possessions, and be able to pay your bills if you stopped receiving your paycheck? If you're like most people you wouldn't be able to meet you financial obligations if you were disabled and unable to work for an extended period of time.

The State Universities Retirement System (SURS) provides a base of disability coverage which requires a voluntary supplement to make the coverage comparable to a corporate plan of benefits. Now you have an opportunity to enroll in a disability insurance plan that will help you safeguard your lifestyle and provide you and your family peace of mind. The State Universities Retirement System sponsors and endorses this Voluntary Supplemental Long Term Disability plan insured by the Prudential Insurance Company of America.

\*   \*   \*

**What will my benefits be?**
Your monthly LTD benefits will be 66/23% of your monthly pre-disability earning, less deductible sources of income and disability earnings, up to a maximum monthly benefit of $7,500.

**What are deductible sources of income?**
Deductible sources of income include benefits from the State Universities Retirement System, Social Security . . ., workers' compensation, and other sources. (See Certificate for details.)

\*   \*   \*

**When am I considered disabled?**
You are considered disabled when, because of injury, sickness or pregnancy, you are unable to perform the material duties of your regular occupation and your disability results in a loss of income of at least 20%. After receiving benefits for 60 months, you may continue to receive benefits if you are unable to perform the material duties of

any gainful occupation for which you are reasonably fitted by education, training or experience.

\*        \*        \*

**What does the State Universities Retirement System (SURS) disability plan pay if I'm disabled?**
The amount of SURS disability benefit will be the greater of (1) 50% of your basic compensation the day you became disabled or (2) 50% of your average earnings for the 24 months prior to the date you became disabled . . .It is paid until you have received 50% of your earnings while a participant of SURS . . . LTD benefits are tax-free and they supplement SURS or DRA benefits.  They pay a benefit when SURS does not pay, provided you have qualified for disability.

\*        \*        \*

Enroll for this Valuable Insurance TODAY!
To enroll, complete the Enrollment Form and return it to the Human Resources Benefits Department.  After your Prudential LTD Insurance becomes effective, you will receive a Certificate which details your plan provisions.

\*        \*        \*

*Arranged by Gallagher Benefit Services*

Long Term Disability coverage is underwritten by The Prudential Insurance Company of America, . . .This is a communication piece only and it is not a certificate of insurance.  A Certificate, with complete plan information, including limitations and exclusions, will be provided.  If there is any discrepancy between this document and the Group Contract/Certificate issued by Prudential, the terms of the Group Contract will govern.  Contract provisions may vary by state. . .

ANALYSIS

I.  COUNT C:  ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

   A.  Determination of Disability under SURS and the Supplemental Policy

Plaintiff alleges that Prudential's managerial agents:

> engaged in an unfair or deceptive trade practice or unfair method of competition [by] creat[ing] a substantial likelihood of confusion or misunderstanding by consumers such as Plaintiff who would believe that for the extra premium withheld from their paycheck Prudential would supplement any benefits that SURS paid when in fact the Prudential policy was entirely independent of the SURS disability income standards and the only part SURS played in the benefits provided was to reduce the amount of benefit that Prudential decided it would pay by the amount SURS was paying . . .

(Amended Complaint, d/e 23, ¶ 35).

The parties agree on the elements necessary for Plaintiff to recover under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("Consumer Fraud Act"): 1) a deceptive act or practice by Prudential 2) in the course of trade or commerce; 3) with the intent for Plaintiff to rely on that deception; and, 4) the deception proximately caused Plaintiff's injury. Cozzi Iron & Metal, Inc. V. U.S. Office Equipment, Inc., 250 F.3d 570, 575-76 (7th Cir. 2001).  A simple breach of contract claim does not amount to cause of action under the Consumer Fraud Act.  *See* Golembiewski v. Hallberg Ins.

Agency, Inc. 262 Ill.App.3d 1082, 1093, 635 N.E. 2d 452, 460 (Ill. App. 1st Dist. 1994).

Prudential does not contend that Plaintiff fails to allege these elements. Prudential argues instead that the Communication indisputably contradicts those allegations and precludes recovery as a matter of law. Prudential advances that: 1) Plaintiff's interpretation of the Communication is unreasonable and unsupported by the Communication's unambiguous language; 2) Plaintiff's reliance on the Communication was not justified because of the Communication's disclaimer; and 3) Prudential did not write the Communication, and is therefore not responsible for any misrepresentations therein.

The parties dispute the meaning of the words "supplemental" and "corporate plan of benefits."  Plaintiff believes these words imply a uniform definition of disability under both SURS and the supplemental policy.  Prudential disputes this, pointing out that the Communication definition of disability is "substantially similar" to the definition in the supplemental policy, not the definition under SURS.  Prudential also points out that nowhere does that Communication say that a claimant is considered disabled under the supplemental policy if the claimant receives benefits from SURS.

The Court cannot determine at this stage that Prudential's interpretation of the Communication is the only reasonable one.  A tortured analysis of the words "supplemental" and "corporate plan of benefits" is not required to reach this

conclusion. It is enough to say that the Communication is silent on the differences between a disability determination under SURS and the supplemental policy. The Communication does define disability, but does not qualify it as *Prudential's* definition. Nor does the Communication's definition of disability indicate the extent of discretion Prudential believes it has to determine disability under the supplemental policy. For example, the Certificate of Insurance states:

> **How Does Prudential Define Disability?**
>
> You are disabled ***when Prudential determines that***:
>
> - you are unable to perform the material and substantial duties of your regular occupation; and
>
> - you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.
>
> After 60 months of payments, you are disabled ***when Prudential determines that*** . . . you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.
>
> (d/e 23, Ex. C)(emphasis in italics and bold supplied)(emphasis in original deleted).

In contrast, the Communication's definition of disability leaves out "when Prudential determines,"--an omission the Court cannot say is immaterial.[2] That omission, along with the Communication's claim of endorsement and sponsorship by SURS, arguably implies that the disability determination under the supplemental policy is a more objective and reviewable determination than is truly the case.

### B.    Reduction of benefits under Supplement Policy by SURS benefits

Prudential's argument here is more compelling.  The Communication expressly states that benefits under the supplemental policy are "66 2/3% of your monthly pre-disability earnings, **less deductible sources of income and disability earnings.**" (emphasis added).  (d/e 23, Ex. A).  Deductible sources of income is clearly defined as including "benefits from the State Universities Retirement System."  The example given in the Communication also expressly states that benefits under the supplemental policy would be "$3,360 monthly, **reduced by SURS** or DRA." *Id.* (emphasis added).

Plaintiff addresses none of these statements.  Instead, Plaintiff points to a bar graph accompanying the example of benefits to argue that benefits under the supplemental policy are not reduced by SURS benefits.  Yet under Plaintiff's

---

[2] The Communication also includes pregnancy as a disability, but the certificate does not.

read of the graph, the claimant would receive *more than* his or her salary for the first 2 ½ years of disability. That interpretation ignores elemental rules of bar graph illustration and produces an absurd result clearly contradicted by the Communication. Under Plaintiff's scenario, the bar for those first 2 ½ years would be *higher* than the claimant's salary, not a constant as shown in the graph. The graph as shown is consistent with the words explaining the example: the graph shows a constant payout of $3,360 per month; $2,2518.20 of that amount is paid by SURS for the first 2 ½ years. ³

### C. Disclaimer and Authorship

Prudential asserts that the "disclaimer" at the end of the Communication warned Plaintiff that she could not rely on the Communication for information about the policy's true coverage. Taking this argument to its logical conclusion, no action under the Consumer Fraud Act would lie for false statements in marketing materials if the materials carried a disclaimer. Prudential cites no case law for that sweeping conclusion. The warning may affect the ultimate merit of the claim, but it does not negate a cause of action at the motion to dismiss stage. Determination of the reasonableness of Plaintiff's reliance on the Communication

---

³The vertical axis on the graph should be labeled, and the $3,360 figure should arguably appear to the left of that axis. Additionally, the graph could have expressly listed the supplemental policy's benefits of $841.50 in the first 2 ½ years. However, even without these improvements, the graph never suggests a payout of benefits above the claimant's salary.

in light of the disclaimer better awaits summary judgment or trial. *See, e.g.,* Commonwealth Insurance Co. v. Stone Container Corp., 351 F.3d 774, 779-80 (7th Cir. 2003)(granting summary judgment to insurer on insured's Consumer Fraud Act claim that insurer misrepresented scope of coverage in publication); Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc., 250 F.3d 570, 576-77 (7th Cir. 2001)(reversing dismissal of Consumer Fraud Act claim under 12(b)(6)).

Similarly, the Court cannot conclude that the "prepared by Gallagher" phrase protects Prudential from liability for the Communication's content. Prudential's logo on the Communication allows the inference at this stage that it directed and ratified the Communication in order to sell its supplemental policy.[4] *See, e.g.,* Smith v. Prime Cable of Chicago, 276 Ill.App.3d 843, 658 N.E.2d 1325 (Ill. App. 5th Dist. 1995)(allegation that cable company created false impression of concert length to induce plaintiffs to purchase viewing rights stated claim under Consumer Fraud Act).

### D. Statute of Limitations

The parties agree that Plaintiff filed her original Complaint in state court within the three-year limitation imposed by the Illinois Consumer Fraud Act, 815 ILCS 505/10a(e)(2000). The original complaint, however, did not make a

---

[4] Prudential asserts that Plaintiff cannot raise an agency argument, seeking to hold Prudential liable for the acts of WIU or Gallagher Benefit Services. (d/e 28, pp. 10-11). Prudential concedes, however, the Plaintiff has not raised this argument. The Court therefore does not address it.

claim under the Consumer Fraud Act. The parties seem to agree that the 3-year limit expired before Plaintiff filed her Amended Complaint adding the Consumer Fraud Act claim. They focus their arguments on whether the Amended Complaint relates back to the filing date of the original Complaint.[5]

An "amended complaint is . . . timely under Rule 15(c)(1) if it meets the requirements of either federal or state law." Arendt v. Vetta Sports, Inc., 99 F.3d 231, 236, n. 3 (7th Cir. 1996); *see also* Henderson v. Bolanda, 253 F.3d 928, 932-33 (7th Cir. 2001)(15(c)(1)'s rationale is that if state law "affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim."); Fed. R. Civ. P. 15. Prudential argues that relation back is not available under either federal or state law, because the Consumer Fraud Act claim is "based on an entirely new set of operative facts, unrelated to Plaintiff's claim for benefits, which solely arose out of Prudential's denial." (d/e 28, p 12).

---

[5] The exact date Plaintiff's Consumer Fraud Act claim accrued is not entirely clear. Prudential asserts that the date is March 30, 2001, purportedly the date Prudential first denied benefits. Plaintiff seems to assert that the denial occurred April 5, 2001 (based on the original Complaint), but her Amended Complaint says she submitted her proof of claim to Prudential on November 2, 2001. There is no information regarding the date that Prudential's decision to deny benefits was final. For purposes of this order only, the Court accepts Plaintiff's assertion that the statute started running April 5, 2001.

It is true that the Fraud Act Claim adds new factual allegations and is more than just a different legal theory for recovery. The Fraud Act Claim is based on the Communication's misrepresentations, Prudential's actions in inducing Plaintiff to rely thereon to purchase the supplemental policy, and Prudential's position that its decision to deny benefits is reviewable only for abuse of discretion. The original Complaint does not mention the Communication or these allegations.

However, the original Complaint does allege that Prudential never delivered the certificate of insurance to Plaintiff personally.[6] (Original Complaint, d/e 1, ¶ 4). Viewing this allegation in the light most favorable to Plaintiff, the original Complaint arguably puts Prudential on notice that Plaintiff was accusing Prudential of wrongdoing *beyond* denying her benefits under the policy. The allegation, though slender, allows room for an inference that Plaintiff believed her coverage was different than in the policy because of Prudential's actions or omissions. Additionally, the Consumer Fraud Act claim would not have arisen without the denial of benefits–the same occurrence that is the centerpiece of the original Complaint. Therefore, the Consumer Fraud Act claim arguably grew out of or arose from the same occurrence and relates back to the original complaint. *See* Fed. R. Civ. P. 15(c)(2); Chandler v. Ill. Cent. R. Co., 107 Ill.2d 331, 346-47 (2003)("This court has recognized that a liberal construction of the requirements

---

[6]The Amended Complaint alleges the Certificate was not sent to Plaintiff until after she justifiably relied on the Communication.

of section 2-616(b) [relation back] is necessary 'in order to allow the resolution of litigation on the merits and to avoid elevating questions of form over substance.'")(citations omitted).

Plaintiff also asserts that part of her Consumer Fraud Act claim accrued during this litigation, when Prudential took the position that its discretion to determine Plaintiff's disability benefits could not be overturned unless arbitrary and capricious. Plaintiff alleges that this position highlighted another deception in the Communication–i.e., the Communication failed to disclose Prudential's claimed broad, essentially unreviewable discretion. Prudential does not address this argument.

The present record does not allow the Court to determine with confidence that the statute of limitations bars the Consumer Fraud Act claim. A more developed record and more extensive briefing in the future may show otherwise.

## II. COUNT D: UNIFORM DECEPTIVE TRADE PRACTICES ACT:

Prudential maintains that consumers can only seek injunctive relief under the Uniform Deceptive Trade Practices Act, and Plaintiff fails to state a claim for injunctive relief because she cannot show a likelihood of suffering future harm.

The Court agrees with Prudential. Reading Plaintiff's Amended Complaint, the alleged deception has already occurred, through the Communication and Prudential's actions in inducing Plaintiff to buy the supplemental policy. No reasonable inference arises that Plaintiff is likely to be deceived by Prudential's

action in the future.  Plaintiff's expected future damage by Prudential's continued refusal to pay benefits is not actionable under the Uniform Deceptive Trade Practices Act.  An injunction under the Uniform Deceptive Trade Practices Act is targeted at stopping the *deception*.  See Smith v. Prime Cable of Chicago, 658 N.E.2d 1325, 276 Ill. App. 3d 843 (Ill. App. 5th Dist. 1995)(no claim under UDTPA where no future harm alleged from cable company's misleading statement about show length); Popp v. Cash Station, Inc., 244 Ill. App. 3d 87, 99-100, 613 N.E.2d 1150, 1157 (Ill. App. 1st Dist. 1992)(no action under act where plaintiffs were not likely to be confused by non-disclosure in the future); Greenberg v. United Airlines, 206 Ill. App. 3d 40, 47, 563 N.E.2d 1031, 1037 (Ill. App. 1st Dist. 1990)(to state an action under the UDTPA, plaintiffs must allege how they will be confused in the future).

### III.  COUNT E:  COMMON LAW FRAUD

The parties essentially agree on the elements Plaintiff must show to succeed on her common law fraud claim:  (1) Prudential made a false statement of material fact; (2) Prudential knew the statement was false; (3) Prudential intended for the false statement to induce Plaintiff to act; (4) Plaintiff's justifiably relied upon the truth of the statement; and, (5) Plaintiff was damaged by relying on the false statement.  Davis v. G.N. Mortgage Corp., 396 F.3d 869, 882 (7th Cir. 2005).

Prudential asserts that Plaintiff has failed to plead these elements with the particularity required under Fed. R. Civ. P. 9(b).  Prudential relies generally on the same arguments already rejected by the Court in Section I above.

The Court believes Plaintiff's allegations of common law fraud are sufficient to withstand Prudential's motion to dismiss.  In the most favorable light, Plaintiff alleges that: 1) Prudential, through the Communication, intentionally and falsely represented how disability is determined under the supplemental policy, in order to induce Plaintiff to buy the policy; 2) that Plaintiff justifiably relied on the Communication in deciding to buy the policy; and, 3) that Plaintiff was injured by those false statements because she bought a policy different from that portrayed in the Communication, resulting in her lack of adequate coverage for her disability.  Plaintiff further alleges that she did not receive a copy of the certificate of insurance until *after* she enrolled, meaning she arguably did not have an opportunity to review anything but the Communication before entering into the agreement.  *Cf.* Cozzi Iron & Metal, Inc. V. U.S. Office Equipment, Inc., 250 f.3d 570, 574 (7th Cir. 2001)(upholding dismissal of common law fraud claim on motion to dismiss where plaintiff had several opportunities to review contract before signing).   Plaintiff may have an uphill battle, but the Court cannot rule out the viability of her common law fraud claim on the pleadings alone at this stage in this case. Arguments on the claim's factual merits belong in a summary judgment motion.  *See, e.g,* Davis v. G.N. Mortgage Corp., 396 F.3d 869, 881-82 (7th Cir.

2005)(discussing elements of common law fraud under Illinois, and upholding summary judgment to defendant where plaintiff's reliance on alleged false statements unjustified); Fed. R. Civ. P. 9(b)(allegations of intent may be averred generally).

## CONCLUSION

WHEREFORE, the Court recommends that Prudential's Motion to Dismiss Counts C, D, and E of Plaintiff's Amended Complaint be granted in part and denied in part (d/e 28). The Court recommends dismissal of Plaintiff's Count D (Uniform Deceptive Trade Practices Act) for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The Court further recommends that Plaintiff's claims based on her allegations that the Communication represents that benefits paid under the supplemental policy are **not** reduced by benefits under SURS be dismissed. This does not result in the dismissal of Counts C and E, since those counts are based on more than the alleged benefit payment misrepresentation. The Court recommends Prudential's motion to dismiss be denied in all other respects.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2. If

the Court adopts this Report and Recommendation, Defendant should be ordered to answer Counts C and E by a date certain.

ENTERED:  June 2, 2005

                s/ Byron G. Cudmore
_____
           BYRON G. CUDMORE
  UNITED STATES MAGISTRATE JUDGE